UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RONALD HANSON,<br><br>            Plaintiff,<br><br>     v.<br><br>THE BOEING COMPANY,<br><br>            Defendant. | C14-1326 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment, docket no. 14.  Plaintiff filed no opposition to the motion.  Having reviewed the papers filed by Defendant in support of the motion, the Court enters the following order.

**Background**

Ronald Hanson ("Hanson") was hired by The Boeing Company ("Boeing") in 1997.  Hanson Dep. at 73 (Ex. 1 to Shapero Decl., docket no. 15) [hereinafter Hanson Dep.].  He worked as an electric assembler until he was terminated in March or April of 2012.  <u>Id.</u> at 26, 74.  This case arises out of the facts surrounding his termination.  During a meeting on January 21, 2011, Vicky Seiders, a human resources generalist employed by

ORDER - 1

Boeing, smelled alcohol on Hanson's breath.  Seiders Decl., docket no. 17, at ¶¶ 2, 3.  In accordance with Boeing's Drug Free Workplace Program, the company arranged for Hanson to take a breath alcohol test.  *Id.* at ¶ 4.  After the breath alcohol test, Ms. Seiders was informed that Hanson needed to be placed on a leave of absence.  *Id.*

After this incident, on February 25, 2011, Hanson signed a Compliance Notification Memo (CNM).  Hanson Dep. at 15–16; Ex.1 to Hanson Dep.  The terms of the CNM provided, in part, as follows:

> Employee will successfully complete the required treatment and/or training program specified by the Employee Assistance Program (EAP) Counselor . . . . Employee's satisfactory participation in the specified program is required as a condition of continued employment by the Boeing Company (the "Company") and shall continue until such time as the Company's EAP or its designee determines that Employee's participation is no longer necessary. . . . Any failure by Employee to participate satisfactorily in the EAP specified program . . . or any violation of this CNM shall be sufficient grounds for Employee's termination of employment.

Ex.1 to Hanson Dep.  At the time Hanson signed the CNM, the terms were explained to him, and he understood its requirements.  Hanson Dep. at 17, 23.

As part of his participation in the EAP, Hanson was required to complete the Substance Abuse Recovery Program (SARP).  *See id.* at 23; Ex. 2 to Hanson Dep.  The SARP required Hanson to refrain from all alcohol consumption.  Ex. 2 to Hanson Dep.  The requirements of the SARP were explained to Hanson by an EAP Counselor, Maria Maier.  Maier Decl., docket no. 16, at ¶ 4.  As of February 2012, Hanson had completed certain aspects of the SARP but was still required to participate in other components of the program, such as attending Alcoholics Anonymous meetings.  *Id.* at ¶ 6.

ORDER - 2

1    In February or March of 2012, Hanson began drinking alcohol again.  Hanson

2  Dep. at 33–34.  In March 2012, he checked into a hospital in-patient detox program.  *Id.*

3  at 26.  The hospital notified Ms. Maier of Hanson's enrollment and that he had been

4  consuming alcohol.  Maier Decl. at ¶ 8.  Hanson also admitted to Maier that he had been

5  consuming alcohol.  *Id.* at ¶ 9.

6    As a result of Ms. Maier's discovery that Hanson had been consuming alcohol and

7  had missed work because of his alcohol consumption, she and her supervisor at the EAP

8  determined that Hanson was out of compliance with the SARP and Boeing's Drug Free

9  Workplace program.  *Id.* at ¶ 10.  In March, Boeing was notified of the EAP's

10 conclusions regarding Hanson's noncompliance with the CNM.  Barnes Decl., docket

11 no. 18, at ¶ 4.  March 28, 2012, Hanson was terminated for being "out of compliance with

12 [the] terms and conditions of the Drug Free Workplace program."  *Id.*; Ex. 2 to Mahan

13 Decl., docket no. 19.

14   In February 2013, Hanson filed a charge of discrimination with the Washington

15 State Human Rights Commission.  Ex. 6 to Hanson Dep.  On August 26, 2013, the Equal

16 Employment Opportunity Commission (EEOC) sent Hanson a notice that its file on the

17 charge was closed because he had not timely filed.  Ex. 7 to Hanson Dep.  In June 2014,

18 Hanson filed this action in state court alleging several claims including (1) breach of

19 contract; (2) intentional and negligent infliction of emotional distress; and (3)

20 discrimination in violation of state and federal statutes.  Compl. at ¶¶ 4.2, 5.2, 6.2, 7.2

21 (Ex. A to Notice of Removal, docket no. 1).  On August 26, 2014, Defendant removed

22

23

ORDER - 3

this action.  Notice of Removal.  Defendant now seeks summary judgment on all claims.  Def.'s Mot. Summ. J., docket no. 14.

**Discussion**

    **A. Standard of Review**

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A material fact is one which the outcome of the litigation depends upon.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  The moving party has the burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  <u>Id.</u>  All reasonable inferences must be construed in the light most favorable to the nonmoving party.  <u>Id.</u>

    **B. Breach of Contract**

Hanson has not supplied any facts to support his claim that Boeing intentionally or negligently broke their agreement when it terminated his employment.  "To prove a breach of an express contract, a plaintiff must identify the contractual obligation that was breached by the defendant."  <u>Worthy v. ITT Technical Inst.</u>, 2010 WL 1780250, at *4 (W.D. Wash. Apr. 30, 2010) (citing <u>Elliott Bay Seafoods, Inc. v. Port of Seattle</u>, 124 Wn. App. 5, 11, 98 P.3d 491 (2004)).  Hanson cannot point to any provision of the CNM that Boeing violated.  To the contrary, the undisputed facts show that Hanson violated the CNM by consuming alcohol.

Hanson contends that consuming alcohol was consistent with his agreement with Boeing.  The CNM required Hanson to comply with all terms of the SARP until the EAP

ORDER - 4

notified him that compliance was no longer necessary. Hanson Dep. Ex. 1. The SARP expressly prohibited Hanson from consuming alcohol. Hanson Dep. Ex. 2. Hanson admits he was not informed that he was released from the conditions of the Agreement. Hanson Dep. at 18–19. Hanson also admits to consuming alcohol. *Id.* at 33–34. Based on the terms of the CNM and his own admissions, Hanson was out of compliance. Boeing was legally entitled to terminate Hanson for his undisputed violation of the CNM. Summary judgment is granted in favor of Boeing on the first claim for breach of contract.

**C. Tort Claims**

Hanson alleges that Boeing intentionally or negligently inflicted emotional distress.[1] Hanson bases these torts claim on the following acts by Boeing: (1) terminating Hanson's employment; (2) refusing Hanson's request for the reason for termination; and (3) challenging Hanson's claim for unemployment benefits. Hanson Dep. at 129.

**1. Intentional Infliction of Emotional Distress**

Washington recognizes the tort of intentional infliction of emotional distress as the tort of outrage. The elements of an outrage claim are (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress. *Orin v. Barclay*, 272 F.3d 1207, 1218 (9th Cir. 2001).

---

[1] Hanson also claims Boeing intentionally or negligently failed to investigate prior to terminating his employment. This claim does not state a cause of action under Washington law. Negligent failure to investigate is not a cause of action under Washington law. *See Lambert v. Morehouse*, 68 Wn. App. 500, 504, 843 P.2d 1116 (1993). The Court is unaware of any cause of action for intentional failure to investigate in an employment context, and Plaintiff does not provide any authority to the contrary.

1     Boeing's conduct toward Hanson was not extreme and outrageous. "The conduct
2 in question must be 'so outrageous in character, and so extreme in degree, as to go
3 beyond all possible bounds of decency, and to be regarded as atrocious, and utterly
4 intolerable in a civilized community.'" *Dicomes v. State*, 113 Wn.2d 612, 630, 782 P.2d
5 1002 (1989) (quoting *Grimbsy v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975)).
6 Whether conduct is sufficiently outrageous is ordinarily a question for the jury, but courts
7 may determine if reasonable minds could differ on whether conduct is outrageous. *Id.* In
8 *Dicomes*, the court concluded that discharge itself could not be outrageous conduct.
9 Rather, "[i]t is the manner in which a discharge is accomplished that might constitute
10 outrageous conduct." *Id.* Hanson has not produced any evidence that the manner in
11 which he was discharged was outrageous. Additionally, no evidence shows that Hanson
12 actually suffered emotional distress.

**2. Negligent Infliction of Emotional Distress**

14    Hanson also brings a negligent infliction of emotional distress (NIED) claim. To
15 succeed on this claim, Hanson must show that (1) the employer's negligent acts caused
16 plaintiff injury, (2) the acts were not part of a workplace dispute or employee discipline,
17 (3) the injury is not covered by the Industrial Insurance Act, and (4) the dominant feature
18 of the negligence claim was the emotional injury. *Snyder v. Med. Serv. Corp. of E.*
19 *Wash.*, 98 Wn. App. 315, 323, 988 P.2d 1023 (1999). The basis for Hanson's alleged
20 emotional distress is his termination for violating Boeing's rules. Because his
21 termination was a disciplinary action, Hanson cannot support a NIED claim against
22 Boeing.

ORDER - 6

**D. Discrimination**

Hanson claims Boeing discriminated against him and sues under various federal and state laws.[2] Hanson did not timely file complaints with the EEOC for any of his federal claims; and therefore, those claims are barred. With regard to his state claims, the facts do not support a prima facie case for discrimination and must be dismissed.

**1. Federal Claims**

Hanson's claims under the Americans with Disabilities Act (ADA), the Age Discrimination Employment Act (ADEA), and Title VII of the Civil Rights Act (Title VII) are all time-barred.[3] Under the ADA, the ADEA, and Title VII, "a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter." <u>Legnani v. Alitalia Linee Aeree Italiane, S.P.A.</u>, 274 F.3d 683, 686 (2nd Cir. 2001) (ADEA and Title VII); <u>Douglas v. Cal. Dept. of Youth Auth.</u>, 271 F.3d 812, 823 n.12 (9th Cir. 2001) (ADA). Complaints are timely if they are filed within 300 days of the alleged unlawful employment practice. 29 U.S.C. § 626(d) (ADEA); 42 U.S.C. § 2000e-5(e) (Title VII); 42 U.S.C. § 12117(a) (ADA). The EEOC dismissed Hanson's complaint because he did not timely file. Hanson Dep. at 129; Ex. 7

---

[2] RCW 49.44. et seq. and 49.60.180 et seq. (WLAD); 29 U.S.C. § 621 et seq. (ADEA); 42 U.S.C. § 12100 et seq. (ADA); 42 U.S.C. § 1983 (Civil Rights).

[3] Hanson also alleges a violation of 42 U.S.C. § 1983, but this section is only available for actions against state actors. <u>Haygood v. Younger</u>, 769 F.2d 1350, 1353–54 (9th Cir. 1985). Defendant is a private corporation and there is no evidence that it was acting under color of state law. Therefore, Hanson has no cause of action under § 1983.

ORDER - 7

to Hanson Dep. That untimeliness bars Hanson's action under the ADA, the ADEA, and Title VII.[4]

### 2. State Claims

Hanson also brings discrimination claims under Washington law. He claims that he received disparate treatment due to his disability and age. Washington applies the *McDonnell Douglas* burden-shifting framework in discrimination cases. *Hines v. Todd Pac. Shipyards Corp.*, 127 Wn. App. 356, 371, 112 P.3d 522 (2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework, a plaintiff has the initial burden of establishing a prima facie case. *Id.* The burden then shifts to the defendant to present evidence of a legitimate, nondiscriminatory reason for the adverse action. *Id.* "The plaintiff carries the ultimate burden at trial to prove discrimination was a substantial factor in employer's actions." *Id.* Hanson cannot establish a prima facie case for his state law discrimination claims.

#### i. Disability Discrimination

Hanson claims he was wrongfully discharged in violation of the Washington Law Against Discrimination (WLAD). WLAD provides that it is an unfair practice for an employer "[t]o discharge or bar any person from employment because of . . . the presence of any sensory, mental, or physical disability." RCW 49.60.180(2). To establish a prima

---

[4] Even if Hanson had timely filed with the EEOC, he did not timely file his federal claims in Snohomish County Superior Court. A plaintiff must file a lawsuit within 90 days of receiving notice of the right to sue from the EEOC. *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1111 (9th Cir. 2006) (ADEA claims and Title VII); 42 U.S.C. § 12117(a) (ADA claims). The EEOC sent notice to Hanson on August 26, 2013, but Hanson did not file suit until June 30, 2014, nearly a year later.

ORDER - 8

facie disability discrimination case, a plaintiff must show that he (1) had a disability; (2) suffered an adverse employment action; (3) was doing satisfactory work; and (4) was replaced by someone who does not have a disability.  <u>Becker v. Cashman</u>, 128 Wn. App. 79, 84, 114 P.3d 1210 (2005).

Hanson fails to establish a prima facie case because he does not show he was subject to disparate treatment.  "[A]n employer who discharges an employee for a discriminatory reason faces a disparate treatment claim."  <u>Id.</u>  There are no facts to suggest that Hanson was replaced by an employee who did not have a disability.  Hanson himself admits that he does not know of any other Boeing employee who was more favorably treated.  Hanson Dep. at 130.  The Court concludes that Hanson has not met his burden to establish a prima facie case of disability discrimination.  The Court grants summary judgment to Boeing on the WLAD claim.[5]

### ii. Age Discrimination

Hanson also asserts a discrimination claim under RCW 49.44, et seq. Hanson's only potential claim under RCW 49.44 is age discrimination.  RCW 49.44.090 (stating that it is an unfair practice for an employer to terminate from employment or discriminate against an individual because that individual is forty years of age or older).  An admission by a plaintiff that discrimination was not the reason for his termination can result in waiver of a claim of discrimination.  <u>See Ross v. Jefferson Cnty. Dep't of Health</u>, 701

---

[5] Even if Hanson could establish a prima facie case, Boeing must prevail because it fired him for the legitimate, nondiscriminatory reason of violating the CNM.  <u>See Hines</u>, 127 Wn. App. at 371.

ORDER - 9

F.3d 655, 661 (11th Cir. 2012) (concluding that plaintiff waived her racial discrimination claim when she admitted during her deposition that she did not believe her termination had anything to do with her race).  Hanson admits that he does not have any reason to believe that Boeing treated him less favorably than other employees because of his age. Hanson Dep. at 132.  Further, Hanson stated that "age" in the complaint was merely an example of a protected class, not part of his allegation.  *Id.* 131–32.  Boeing is entitled to summary judgment in its favor on the issue of age discrimination.

**Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED, and Plaintiff's claims are DISMISSED with prejudice.

IT IS SO ORDERED.

Dated this 23rd day of October, 2015.

*/s/ Thomas S. Zilly*

Thomas S. Zilly
United States District Judge